Nos. 10-5055 & 10-5057

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LINDSEY KENT SPRINGER and
OSCAR AMOS STILLEY,

Defendants-Appellants

————

ORAL ARGUMENT IS NOT REQUESTED

————

ON APPEAL FROM THE JUDGMENTS OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA
THE HONORABLE STEPHEN P. FRIOT, PRESIDING
(No. 09-cr-00043)

————

CONSOLIDATED BRIEF FOR THE APPELLEE

————

FRANK P. CIHLAR          (202) 514-5396
  *Chief, Criminal Appeals &*
  *Tax Enforcement Policy Section*
  *Tax Division*
GREGORY VICTOR DAVIS   (202) 514-5396
CHARLES A. O'REILLY       (202) 514-5396
ALEXANDER P. ROBBINS   (202) 514-5396
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
THOMAS SCOTT WOODWARD
 *United States Attorney*

i

# TABLE OF CONTENTS

Page

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A. Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B. Conspiracy and Offense Conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C. Timeline of the Grand Jury Investigation. . . . . . . . . . . . . . . . . . . . . . . 11
    D. Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.     The Indictment Properly Charged Springer and Stilley and
           Their Convictions are Not Invalid as a Matter of Law Because of
           the IRS's Administrative Reorganization.. . . . . . . . . . . . . . . . . . . . . . 15

    II.    The Paperwork Reduction Act Offers No Defense
           to Criminal Tax Charges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    III.   The District Court Properly Denied Springer's and Stilley's
           Motions to Suppress Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    IV.   The District Court Properly Instructed the Jury. . . . . . . . . . . . . . . . . 27

    V.    The District Court Properly Refused to Allow the Defendants to
           Subpoena Government Witnesses in Violation of the *Touhy*
           Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    VI.   Springer's Waiver of His Right to Counsel was Voluntary,
           Knowing, and Intelligent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    VII.  The District Court Correctly Calculated the Defendants' Sentencing
           Ranges Under the Guidelines and Imposed Reasonable Sentences.. 37

    VIII. This Court Should Decline to Address Issues Raised in
           a Perfunctory Manner Unaccompanied by Some Effort
           at Developed Argumentation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
Certificate Required by General Order of March 18, 2009. . . . . . . . . . . . . . . 53
Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

ii

## TABLE OF AUTHORITIES

Cases:                                                                                                Page

*Boulware v. United States*, 552 U.S. 421 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Cheek v. United States*, 498 U.S. 192 (1991). . . . . . . . . . . . . . . . . . . . . . . . . 41, 45
*Comm'r v. Duberstein*, 363 U.S. 278 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203 (1990). . . . . . . . . . . 30
*Comm'r v. Kowalski*, 434 U.S. 77 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Dennis v. United States*, 384 U.S. 855 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . 49
*Dowell v. United States*, 553 F.2d 1233 (10th Cir. 1977). . . . . . . . . . . . . . . . . . 29
*Faretta v. California*, 422 U.S. 806 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . 33, 36
*Hammerschmidt v. United States*, 265 U.S. 182 (1924). . . . . . . . . . . . . . . . . 20, 50
*Iowa v. Tovar*, 541 U.S. 77 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35
*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
*Lewis v. Commissioner*, 523 F.3d 1272 (10th Cir. 2008). . . . . . . . . . . . . . . . 20, 30
*Ligon v. Stilley*, —S.W.3d —, 2010 Ark. 418 (2010). . . . . . . . . . . . . . . . . . . . . 4
*McDowell v. United States*, 159 U.S. 596 (1895). . . . . . . . . . . . . . . . . . . . . . . . 32
*Neder v. United States*, 527 U.S. 1 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Nguyen v. United States*, 539 U.S. 69 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*Springer v. Commissioner*, 580 F.3d 1142 (10th Cir. 2008). . . . . . . . . . 11, 16, 21
*Springer v. Internal Revenue Service ex rel. United States*,
        231 Fed.App'x 793, 795 (10th Cir. 2007) (unpublished). . . . . . . . . . . . 4, 36
*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
        529 U.S. 765 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Weeks v. Angelone*, 528 U.S. 225 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
*Wheeler v. Comm'r*, 528 F.3d 773 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 23
*United States v. Allen*, 554 F.2d 398 (10th Cir. 1977). . . . . . . . . . . . . . . . . . . . 31
*United States v. Alpaizco-Valenzuela*, 546 F.3d 1208 (10th Cir. 2008). . . . . . 38, 39
*United States v. Becker*, 965 F.2d 383 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . 25
*United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009). . . . . . . . . . . . . . . 24, 25
*United States v. Calandra*, 414 U.S. 338 (1974). . . . . . . . . . . . . . . . . . . . . 17, 25
*United States v. Callwood*, 66 F.3d 1110 (10th Cir. 1995). . . . . . . . . . . . . . . . . 47
*United States v. Chisum*, 502 F.3d 1237 (10th Cir. 2007). . . . . . . . . . . . . . . . . . 21
*United States v. Dashney*, 117 F.3d 1197 (10th Cir. 1997). . . . . . . . . . . . . . . . . 16
*United States v. Dawes*, 951 F.2d 1189 (10th Cir. 1991). . . . . . . . . . . . . . . . . . . 22
*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . 47
*United States v. Gama-Bastidas*, 222 F.3d 779 (10th Cir. 2000). . . . . . . . . . . . . 16
*United States v. Garman*, 748 F.2d 218 (4th Cir. 1984). . . . . . . . . . . . . . . . . . . 19
*United States v. Gerritsen*, 571 F.3d 1001 (9th Cir. 2009). . . . . . . . . . . . . . . . . 36
*United States v. Gilgert*, 314 F.3d 506 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . 45
*United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). . . . . . . . . . . . . . . . . 24
*United States v. Gross*, 626 F.3d 289 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 21
*United States v. Gwathney*, 465 F.3d 1133 (10th Cir. 2006). . . . . . . . . . . . . . . . 27
*United States v. Hardwell*, 80 F.3d 1471 (10th Cir. 1996). . . . . . . . . . . . . . . . . . 35
*United States v. Hien Van Tieu*, 279 F.3d 917 (10th Cir. 2002). . . . . . . . . . . . 45, 49

iii

Cases (continued):                                                                              Page

*United States v. Hughes*, 191 F.3d 1317 (10th Cir. 1999). . . . . . . . . . . . . . . . . . 36
*United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009). . . . . . . . . . . . . . 34
*United States v. Jones*, 530 F.3d 1292 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . 44
*United States v. Kontny*, 238 F.3d 815 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . 43
*United States v. LaSalle National Bank*, 437 U.S. 298 (1978). . . . . . . . . . . . 25, 26
*United States v. Lewis*, 625 F.3d 1224 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . 38
*United States v. Martinez*, 979 F.2d 1424 (10th Cir. 1992). . . . . . . . . . . . . . . . 49
*United States v. Meek*, 998 F.2d 776 (10th Cir. 1993). . . . . . . . . . . . . . . . . . 40, 41
*United States v. Mounkes*, 204 F.3d 1024 (10th Cir. 2000). . . . . . . . . . . . . . . . 45
*United States v. Patridge*, 507 F.3d 1092 (7th Cir. 2007). . . . . . . . . . . . . . . 16, 22
*United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973). . . . . . . . . . . . . . . . . . . 20
*United States v. Sams*, 865 F.2d 713 (6th Cir 1988). . . . . . . . . . . . . . . . . . . . . 19
*United States v.  Smith*, 413 F.3d 1253 (10th Cir. 2005). . . . . . . . . . . . . . . . . . 33
*United States v. Spencer*, 178 F.3d 1365 (10th Cir. 1999). . . . . . . . . . . . . . . . . 41
*United States v. Stillhammer*, 706 F.2d 1072 (10th Cir. 1983). . . . . . . . . . . . . 22
*United States v. Terrell*, 754 F.2d 1139 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . 29
*United States v. Tucker*, 451 F.3d 1176 (10th Cir. 2006). . . . . . . . . . . . . . . . . . 32
*United States v. Turner*, 287 F.3d 980 (10th Cir. 2002). . . . . . . . . . . . . . . . 33, 34
*United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008). . . . . . . . . . . . 38
*United States v. Willie*, 941 F.2d 1384 (10th Cir. 1991). . . . . . . . . . . . . . . . 35, 36
*United  States v. Wooten*, 377 F.3d 1134 (10th Cir. 2004). . . . . . . . . . . . . . . . . 46
*United States v. Yarnell*, 129 F.3d 1127 (10th Cir. 1997). . . . . . . . . . . . . . . . . 46
*United States v. Zapata*, 546 F.3d 1179 (10th Cir. 2008). . . . . . . . . . . . . . . . . 24


Statutes:


18 U.S.C. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
18 U.S.C. 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 49
18 U.S.C. 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
18 U.S.C. 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 37
18 U.S.C. 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
26 U.S.C. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20
26 U.S.C. 102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
26 U.S.C. 6012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21
26 U.S.C. 6072. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22
26 U.S.C. 6091. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
26 U.S.C. 7201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 45
26 U.S.C. 7203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22
26 U.S.C. 7602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25, 26
28 U.S.C. 116. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
28 U.S.C. 292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
28 U.S.C. 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
31 U.S.C. 5313. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
44 U.S.C. 3507. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

iv

Statutes (continued):                                                          Page

44 U.S.C. 3512. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Miscellaneous:

Fed. R. App. P. 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Fed. R. Crim. P. 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Fed. R. App. P. 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Fed. R. App. P. 28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 47
Fed. R. App. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
Fed. R. Crim. P. 52. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
31 C.F.R. 103.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
26 C.F.R. 1.6091-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
26 C.F.R. 301.9000-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
69 Fed. Reg. 55743 (Sept. 16, 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
69 Fed. Reg. 60222 (Oct. 7, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

————

Nos. 10-5055 & 10-5057

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LINDSEY KENT SPRINGER and
OSCAR AMOS STILLEY,

Defendants-Appellants

————

ON APPEAL FROM THE JUDGMENTS OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA
THE HONORABLE STEPHEN P. FRIOT, PRESIDING
(No. 09-cr-00043)

————

CONSOLIDATED BRIEF FOR THE APPELLEE

————

STATEMENT OF RELATED CASES

Lindsey Springer has filed the following appeals and petitions before this Court involving issues related to this appeal: *Springer v. Commissioner of Internal Revenue*, 97-9008; *Springer v. Internal Revenue Service*, 06-6268; *Springer v. Commissioner of Internal Revenue*, 08-9004;  *Springer v. Albin, et al.*, 09-5088; *Springer v. Commissioner of Internal Revenue*, 10-5037; *In re: Lindsey Kent Springer*, 10-5101; *Springer v. Commissioner of Internal Revenue*, 10-9001; *United States v. Springer*, 10-5156; and *United States v. Springer*, 11-5018.

Following Oscar Stilley's conviction in this case for conspiring to defraud the United States and tax evasion, this Court, on May 18, 2010, initiated *In re*

- 2 -

*Oscar Amos Stilley*, 10-812, ordering Stilley to show cause why he should not be disciplined.  Also, on August 30, 2010, this Court dismissed Stilley's appeal of the order by district court for the Northern District of Oklahoma suspending him from practice before that court.  *See In re Oscar A. Stilley*, 09-5090.

## JURISDICTIONAL STATEMENT

Defendant-Appellants Lindsey Kent Springer and Oscar Amos Stilley appeal their convictions and sentences.  The United States District Court for the Northern District of Oklahoma (the Honorable Stephen P. Friot, presiding) had original jurisdiction over their criminal prosecution under 18 U.S.C. 3231.  Notwithstanding Springer's assertion on appeal that "[t]he District Court's jurisdiction can only exist if properly authorized by the Secretary" of the Treasury (Br.[1] 11), the United States has standing to prosecute violations of its criminal laws, *see Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("the injury to its sovereignty arising from violation of its laws . . . suffices to support a criminal lawsuit by the Government").

---

[1] Throughout this brief, "Br." refers to defendant Springer's brief, "Stilley Adoption" refers to Stilley's filing, docketed January 18, 2011, that adopted the arguments in Springer's Brief, "Doc." refers to a particular document in the district court's docket (and, if followed by a hyphen and a number, a particular attachment to that document), "Tr." refers to the trial transcript (Docs. 385-398), "[Date] Tr." refers to a particular pretrial hearing transcripts (Docs. 114, 115, and 422), "Exh." refers to an exhibit introduced by the government at trial, "Deposition" refers to the transcript of the deposition of Vikki Lynn Wiggins taken on October 16, 2009, which was introduced at trial (Tr. 609-611; Exh 2 and 2A), and "Sentencing" refers to the sentencing transcript (Docs. 399-401).

- 3 -

The district court announced the defendants' sentences on April 23, 2010, and entered its final judgments on April 28, 2010. (Doc. 337.) Each defendant filed a timely notice of appeal on April 23, 2010 (Docs. 340, 348), *see* Fed. R. App. P. 4(b)(1)(A) & (2), and this Court has jurisdiction over these appeals under 28 U.S.C. 1291 and 18 U.S.C. 3742.

## STATEMENT OF THE ISSUES

1.  Whether the counts of conviction are invalid as a matter of law because of the abolition of Internal Revenue districts in 2000.

2.  Whether the Paperwork Reduction Act, 44 U.S.C. 3512(a), prevented the district court from imposing any penalties based on the counts of conviction.

3.  Whether the IRS issued civil summonses after Springer's case was referred to the Department of Justice for criminal investigation, and, if so, whether that would require reversal of Springer's conviction even though none of the evidence obtained from the civil summonses was introduced at trial.

4.  Whether the district court committed reversible error in its jury instructions defining the terms "gift" and "income."

5.  Whether the district court's adherence to regulations governing the issuance of subpoenas to federal employees ("*Touhy* regulations") violated the defendants' Sixth Amendment rights and requires reversal of their convictions.

6.  Whether Springer and Stilley voluntarily, knowingly, and intelligently waived their right to counsel.

7.  Whether the district court erred when computing the defendants' advisory ranges under the Sentencing Guidelines.

- 4 -

## STATEMENT OF THE CASE

On March 10, 2009, a federal grand jury charged Springer and Stilley with one count of conspiring to defraud the United States (18 U.S.C. 371) and two counts of attempting to evade Springer's income taxes for the years 2003 and 2005 (26 U.S.C. 7201 & 18 U.S.C. 2). The grand jury also charged Springer with attempted tax evasion for 2000 (26 U.S.C. 7201), and with two counts of willful failure to file a federal income tax return for the years 2002 and 2004 (26 U.S.C. 7203). (Doc. 2.) On November 16, 2009, after a 12-day trial, the jury convicted Springer and Stilley of each charge. (Doc. 245.)

The district court sentenced both Springer and Stilley to fifteen years' imprisonment, three years of supervised release, and payment of restitution. (Docs. 337 and 338.) Springer and Stilley appeal their convictions and sentences.

## STATEMENT OF FACTS

During the time period relevant to this appeal, Springer was a self-proclaimed minister operating under the name "Bondage Breakers Ministry,"[2] whose stated mission "was to get rid of the IRS." (Tr. 2618; Br. 46.) Stilley was an attorney who specialized in handling disputes with the IRS. (Tr. 2404, 2415.) He has since been disbarred.[3]

---

[2] This Court previously described Bondage Breakers Ministry as an entity, "organized in 1992, whose sole purpose is 'to expose the violations of the written law committed by the Internal Revenue Service.'" *Springer v. Internal Revenue Service ex rel. United States*, 231 Fed.App'x 793, 795 (10th Cir. 2007) (unpublished).

[3] The Supreme Court of Arkansas ordered Stilley disbarred November 4, 2010. *See Ligon v. Stilley*, — S.W.3d —, 2010 Ark. 418 (2010). Stilley had been

- 5 -

The primary factual issue at trial was whether Springer and Stilley acted with the necessary criminal intent to evade Springer's taxes and to defraud the United States.  Springer admitted to earning substantial income: he told his fiancée's grandmother "that he made well over $300,000 a year" (Tr. 999), and he admitted to receiving payments under the name "Bondage Breakers Ministry" (Tr. 2806-2809).  Springer also admitted using the business "Checks Cashed" to cash checks.  (Tr. 2810).  Neither Springer nor Stilley has filed a federal income tax return since the late 1980s (Tr. 451-456, 2776), nor did either defendant file a state income tax return for the years 2000 through 2006.[4]  (Tr. 428 and 599.)

A. *Background*

Springer's initial dispute with the IRS occurred in the late 1980s, resulting from the IRS's assertion that Springer was liable as an officer of a company called One Stop Collision Repair Center for payroll taxes that were withheld and not paid over.  (Tr. 2597-2598.)  Springer stated that his "battle with the IRS on whether I was liable or not . . . tore apart" his first marriage.  (Tr. 2600)  In the early 1990s, Springer gave up trying to resolve his conflicts with the IRS through ordinary means:

> I sat down with an associate pastor, and I asked him, what should I
> do?  What would God have me do?  And he told me—before he gave
> me the answer, he said Lindsey, you used to have trouble with
> marriage—or if you had trouble with marriage, you would go to a
> marriage counselor.  Now, you would go to Jesus.  If you—you used

_____

suspended pending disbarment beginning December 27, 2007.

[4]  There was no evidence at trial regarding either Springer or Stilley's state income tax filing histories for the years preceding 2000.

- 6 -

> to have health problems, you would go to a doctor. Now, you go to
> Jesus.
>
> And I asked him, Well, what should I do when I have tax issues with
> the IRS? And he said, You need to go hire an accountant and a
> lawyer for that. And I had already been to that road and now I was
> being told there was no answer for me here either.

(Tr. 2606.) So Springer instead began traveling across the country, meeting

hundreds of other people who had problems with the IRS, and filing lawsuits. (Tr.

2608-2609.) In total, Springer testified that he filed or caused others to file

"[m]aybe a thousand" lawsuits, including lawsuits against his former fiancée,

lawsuits against the United States, and lawsuits against individual employees of

the United States. (Tr. 2788-2789.)

Stilley, like Springer, had his first run-in with the IRS during the 1980s,

when the IRS fined him $500 after he falsely claimed exemption from withholding

so that he could make interest payments on his car. (Tr. 2408.) Stilley also

testified that the IRS put one of his employers out of business, because the

company had not withheld taxes on the $40 daily per diem paid to tree planters.

(Tr. 2409-2410.) According to Stilley, a few years later, he read Irwin Schiff's

book, *How Anyone Can Stop Paying Income Taxes*, in one night; he testified that

"immediately believed what Irwin Schiff had to say." (Tr. 2412-2413.) Stilley

then "promptly went to [his employer] and asked him for a W-4," so that he could,

once again, claim exemption from withholding. (Tr. 2413.)

## B. Conspiracy and Offense Conduct

A mutual acquaintance, Phillip Roberts, introduced Springer and Stilley in

1999. (Tr. 286-287, 2417; Sentencing 397.) Shortly thereafter, Springer and

- 7 -

Stilley began working together.  They had "been sharing [information] since late 1999," and Springer began "mak[ing] out money orders to Oscar Stilley" beginning "around April of 2000."  (Tr. 2747-2748.)  Springer maintained no bank account during the years 2000 through 2005; instead, he paid a 2-3% transaction fee to cash checks at Checks Cashed, which allowed him to cash checks payable to Bondage Breakers Ministry without having to provide the usual documentation.  (Tr. 341-343.)  Springer also failed to report his social security number on any of the Currency Transaction Reports[5] prepared by Checks Cashed—in sum, these transactions totaled more than $789,000.  (Tr. 334-335, 348-349, 362; Exh. 61.)[6]  In 2003, Springer and Stilley began using Stilley's "Interest on Lawyer Trust Account" (IOLTA)[7] to receive and spend money for Springer's benefit; during that year, Springer and Stilley funneled $164,539 of income attributable to Springer through Stilley's IOLTA.  (Tr. 1982-1985, 1988-1993, 1995-1997, 2006, 2008-2009; Exhs. 25, 26, 33, 34, 35, 36, 92, 101, 106, 107, 135, 139, 678, 690.)

---

[5]  A Form 4789 "Currency Transaction Report," or "CTR," is a form on which financial institutions are required to report currency transactions in excess of $10,000 to the IRS.  *See* 31 U.S.C. 5313; 31 C.F.R. 103.22(b)(1).  This form requires the financial institution to report the identity of the person making the transaction. *See* IRS Form 4789, items 4-7.

[6]  During the years 2000 through 2005, Springer cashed $789,394 worth of checks for which CTRs were filed.  For the years 1999 through 2007, this total was $1,300,495.40.  (*See* Exh. 61.)

[7]  An IOLTA is a trust account maintained by an attorney for his clients. *See* Ark. Mod. R. Prof. Conduct 1.15(b).

- 8 -

In 2005, approximately $250,000 of Springer's income went through Stilley's IOLTA.  (Tr. 1469; Exhs. 114, 233, 234, 681.)

Springer also received income indirectly under the name "Bondage Breakers Ministry"—Bondage Breakers was simply a nominee controlled by Springer, not any formal charitable or religious organization.  (Tr. 2807.)  At trial, numerous witnesses testified that they gave Springer money because he helped them with various legal (and in particular tax-related) problems, for example: Vikki Wiggins, who paid Springer $65,000 to pursue civil claims on her behalf (Deposition Tr. 19-22, 26, 29-31, 40-42)[8]; Eddy Patterson, who paid Springer $45,000 to handle an IRS criminal investigation (Tr. 653-656); James Lake, who paid $30,000 to hire Springer as a "legal expert" in his criminal tax prosecution[9] (Tr. 825-826); Arthur and Cynthia Hawkins, who, believing Springer was an attorney, were persuaded to fire the attorney who represented Arthur Hawkins in a federal criminal trial and replace him with Springer and Stilley, for a total price of more than $250,000 (including both the sentencing and the subsequent appeal).[10]

---

[8] Vikki Wiggins testified at trial via a pre-recorded video deposition pursuant to Fed. R. Crim. P. 15.  (Tr. 611.)

[9] Lake testified that Springer would "prepare[] the documents" in his case and "Stilley as the attorney would actually file them."  (Tr. 829.)  The District Court for the Northern District of Georgia subsequently barred Stilley and Springer from representing Lake.  (Tr. 831-832.)

[10] Arthur Hawkins testified he fired his trial counsel, Tom McQueen, after Springer and Stilley told the Hawkinses that McQueen had made various procedural errors because he had, among other failings, "no understanding of federal nexus jurisdiction regarding federal offense[s]."  (Tr. 1646; *see also* Exh. 204 (a letter from Springer and Stilley to Arthur Hawkins inveighing against

- 9 -

(Tr. 1632-1645, 1648-1652, 1758-1760; Exhs. 678, 1170 and 1171); Denny
Patridge, who paid Springer more than $20,000 to help Mr. Barringer defend
Patridge in a criminal tax prosecution (Tr. 1171-1178); Andrew Ouwenga, who
paid Springer and Stilley $50,000 each to defend his wife in a tax evasion case
(Tr. 1209-1216; Exhs. 32 and 104); Laurel Gardner and Erika Dertien, Ouwenga's
daughters, who paid Springer an additional $40,000 to defend their mother in her
criminal tax case (Tr. 1240-1250, 2171; Exhs. 40 and 44); and Hamlet Bennett,
who paid Springer $25,000 to help defend him in a tax-evasion case (Tr. 1034-
1035; Exh. 135). In 2005, Springer received $250,000 from Patrick Turner
through Stilley's IOLTA; while Turner believed Springer was holding the money
for him to protect it from IRS seizure, Springer promptly used the funds to buy
himself a Lexus, a trailer, and a $166,000 motor home. (Tr. 1457-1476, 1992-
1993, 2062-2065.)

    Springer reported none of this income to the IRS. During the execution of
the search warrant, Springer told IRS Special Agent Brian Shern that he had no
income and "only receives gifts and donations and that the people he receives this

---

McQueen for failing to raise various frivolous arguments).) Although the
Hawkinses were also upset with McQueen for incorrectly predicting the
Guidelines range would be 3 years instead of the 10 years recommended by the
Presentence Report (Tr. 1631-1632), Arthur Hawkins testified that Springer and
Stilley's representation of him at his sentencing did not help: "when they finished,
it guaranteed I was going to get ten years." (Tr. 1654.) Even after sentencing,
however, Cynthia Hawkins was assured that Springer and Stilley's attempts to
"unseal" her husband's indictment would bring him home: as she related at trial,
"My daughter was getting—our daughter was getting married May 31st. And Mr.
Springer told me to have his tuxedo ready because he would be coming home after
the appeal at the circuit level on May 28th." (Tr. 1761-1762.)

- 10 -

money from expect no services in return." (Tr. 1818.)  This statement was false.

Although three of the witnesses at trial denied that there was a *quid pro quo*

arrangement behind their payments to Springer, the remainder—including each of

those listed above—stated that their payments were for services, even where the

payments were labeled "donations" at Springer's instruction.  (*See, e.g.*, Tr. 315,

399, 895-896, 899-900, 911-912, 1587-1590).[11]  When Vikki Wiggins, for

example, asked Springer "to continue helping" her and her church's members

pursue a civil suit—after she had already paid Springer $65,000—"his response to

me, and this was our final break, I couldn't believe what I heard.  He said, 'I

will—I'll do it, but I won't do it for nothing.'  And in my eyes he had already been

paid."  (Deposition 42.)  Laurel Gardner similarly testified that Springer did not

treat her payments as gifts: she testified that, after she decided to stop paying

Springer, Springer threatened "that if I wasn't going to pay he would put a lien on

my parents' property."  (Tr. 1250.)

Stilley, in addition to funneling Springer's income through his IOLTA, also

falsely told Special Agent Shern that Springer received no income—just non-

taxable gifts and donations, when Special Agent Shern served Stilley with a

subpoena on January 20, 2006.  (Tr. 1818.)  And, in response to a grand jury

subpoena, Stilley submitted billing records that falsely omitted references to

_____

[11]  Only three witnesses testified that there was no *quid pro quo*
arrangement.  (*See* Tr. 1011-1012 (Michael Burt), 1558-1564 (Lawrence
Logsdon), 2247-2257 (Paul Stumpo).)  The IRS, however, had no record of
anyone filing gift tax returns with respect to income attributed to either Springer or
Stilley during the years 2000 through 2008.  (Tr. 444-445, 458.)

- 11 -

Springer (Tr. 1820-1821) and a document falsely representing that "Springer does

not charge for his services" (Tr. 1819; Exh. 582).

At trial, Springer admitted to many of the factual allegations in the

indictment, even acknowledging that the funds he received were income.

(Tr. 2789-2806.)  But Springer told the jury that he believed he did not have to file

federal income tax returns or pay federal income taxes because the IRS's

(purported) failure to comply with the Paperwork Reduction Act rendered his

compliance with the tax laws voluntary (Tr. 2692), and because he believed at the

time that the funds he received were gifts and donations (Tr. 2693).

## C.  Timeline of the Grand Jury Investigation

Since 1996, the IRS has been attempting to assess and collect Springer's

individual income tax liabilities for the years 1990 through 1995, and through

numerous lawsuits and other interactions both Springer and the IRS have become

very well acquainted.[12]  (*See* Doc. 75-4 (attachment to Springer's motion for

*Franks* hearing); *Springer v. Commissioner*, 580 F.3d 1142, 1143 (10th Cir.

2008).)  As of March 2003, however, Springer was not under criminal

investigation.  (7-2-2009 Tr. 82.)  The IRS was considering possible action against

Springer regarding alleged promotion of abusive trusts, and at least one revenue

agent thought that the IRS "could be up against some stiff competition if we

decide to work him."  (Doc. 75-21.)   In 2003, the IRS began a civil investigation

---

[12]  In a colloquy, the district court observed, "[a]s of May of '04 you were
old hat with the IRS," to which Springer responded, "No doubt about it."  (7-2-
2009 Tr. 50.)

- 12 -

into whether Springer was promoting abusive trusts and, on January 26, 2004, it notified Springer regarding possible civil action. (Doc. 75-10.) By letter dated December 2, 2004, the IRS informed Springer that this review was discontinued. (Doc. 75-13.)

Contemporaneously, Eddy and Judith Patterson were prosecuted and convicted of conspiracy to defraud the United States, tax evasion, making false statements, and securities fraud. *See United States v. Patterson et al*., 03-cr-55 (N.D. Okla. 2003). Eddy Patterson then met with prosecutors on May 6, 2004, and agreed to assist in a continuation of the criminal investigation, which by then was targeting Springer and the Pattersons' attorneys, Stilley and Jerold Barringer. (7-2-2009 Tr. 50; Doc. 75-21.) On September 4, 2004, the United States moved to reduce Judith Patterson's sentence based on her substantial assistance (Doc. 75-22); she testified before the grand jury on October 6, 2004. (Doc. 224-2.)

On June 3, 2005, the IRS requested permission from the Tax Division of the Department of Justice to expand the existing Patterson grand jury investigation to include Springer's potential violations of the criminal tax laws; this request was approved on June 10, 2005. (Docs. 80-1 and 80-9.) On September 16, 2005, IRS agents searched Springer's home pursuant to a warrant (Tr. 1614-1615), and on February 2, 2006, the grand jury issued a subpoena to Stilley. The subpoena provided that it could "be complied with by turning over the requested records to Special Agent Brian Shern . . . ." (Doc. 80-7.) Nevertheless, Stilley chose to testify in person before the grand jury on March 9, 2006; he also provided the grand jury with a "Response to Subpoena," which contained various allegations

- 13 -

against the prosecuting attorneys handling the grand jury investigation. (Doc. 80-8.) On January 26, 2007, at the request of the United States Attorney and recommendation of the IRS, the Tax Division authorized the expansion of the grand jury investigation to include Stilley, as well. (Docs. 80-3, 80-4, and 80-5.)

*D. Sentencing*

Based upon the evidence of income presented at trial and at the sentencing hearing, the district court found that the tax losses attributable to Springer and Stilley were $1,085,474.80 and $1,303,096, respectively. (Sentencing 408-409.) The district court then imposed sentencing enhancements on both Springer and Stilley for failing to report criminal-source income, using sophisticated means to commit their crimes, encouraging others to violate the tax laws, and obstructing justice. (Sentencing 412-428.) The court also imposed an enhancement on Springer for organizing others in criminal activity and on Stilley for using his position as an attorney to carry out his crimes. (Sentencing 421-422.) The court calculated Springer's total offense level as 34 and Stilley as 32, each with a Criminal History Category of I. (Sentencing 430.)

The district court sentenced both Springer and Stilley to 15-year terms of imprisonment. (Docs. 337 and 338.) Springer's term of imprisonment was within the calculated Guideline range; Stilley's term of imprisonment was a three-year upward variance from the calculated Guideline range based on the court's application of the factors in 18 U.S.C. 3553(a). In imposing Stilley's sentence, the district court explained that Stilley had, "to a truly astonishing extent, used [his] license to practice law as an instrument of fraud and a license to steal," and that it

- 14 -

was imposing an "upward variance from the guideline range" because otherwise Stilley's "sentence would reflect a completely unjustifiable and unwarranted sentencing disparity as between" him and Springer.  (Sentencing 449.)

## SUMMARY OF THE ARGUMENT

1.  The obligation to pay file federal income tax returns and pay federal income taxes arises by statute, independent of the existence or nonexistence of Internal Revenue Service district directors.  The Internal Revenue Service Reform and Restructuring Act of 1998 did not eliminate the requirement that individuals file income tax returns and pay federal income taxes.

2.  The Paperwork Reduction Act offers no defense to the crime of willfully failing to file a tax return or to any other tax crime.

3.  The district court correctly denied Springer and Stilley's motions to suppress evidence based on an alleged violation of 26 U.S.C. 7602(d) because the relevant IRS civil summonses were issued before Springer's case was referred by the IRS to the Department of Justice and because, in any event, no evidence obtained as a result of the IRS's summonses was introduced at trial.

4.  The district court correctly defined the terms "gift" and "income" in its instructions to the jury.

5.  The district court correctly required Springer and Stilley to adhere to the "*Touhy* regulations" governing the issuance of subpoenas to federal employees.

6.  Springer waived his right to counsel knowingly and intelligently.

7.  The district court properly calculated Springer's and Stilley's sentencing ranges under the Guidelines.

- 15 -

ARGUMENT

In Parts I-VII below, the government responds to each of the seven arguments raised in Springer's brief (and adopted in whole or in part by Stilley).[13]

In addition to these seven arguments, Springer offers various conclusory assertions throughout his brief, including a number at the end under the heading "Other Issues" (Br. 53-54). Some of these assertions appear related to arguments made earlier in Springer's brief, while some appear to be undeveloped new arguments. Although each of these "Other Issues" arguments is waived, the government, in an abundance of caution, briefly responds to Springer's additional, undeveloped arguments in Part VIII of this brief. Part VIII of this brief also responds to Stilley's separate argument that his conviction for conspiracy to defraud the United States in violation of 18 U.S.C. 371 is invalid as a matter of law or, alternatively, carries a maximum penalty of only 30 days' imprisonment. (*See* Stilley Adoption at 13-14, 17.)

I

THE INDICTMENT PROPERLY CHARGED
SPRINGER AND STILLEY AND THEIR CONVICTIONS
ARE NOT INVALID AS A MATTER OF LAW BECAUSE
OF THE IRS'S ADMINISTRATIVE REORGANIZATION

First, the defendants incorrectly argue (Br. 8-13) that, as a result of the IRS's administrative reorganization in 2000, "the indictment failed to allege an

---

[13] Stilley adopts Springer's arguments to the extent they apply to him, *see* Fed. R. App. P. 28(i), with the exception of Springer's right-to-counsel argument (*see* Stilley Adoption 14). Accordingly, the government's responses to Springer's arguments are also intended as responses to Stilley's arguments, as applicable.

- 16 -

offense in all Six Counts because no law required Springer to deliver any Form

1040 U.S. Individual Income Tax Return for calendar year 2000 through 2007 to

any place 'required by law.'" (Br. 11.)[14]  Springer's argument on this point also

contains a related though somewhat unclear assertion that there was no venue in

the Northern District of Oklahoma.  (Br. 11.)

A.  *Standard of Review*

    The sufficiency of an indictment is subject to de novo review.  *United States

v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000).  "An indictment is

sufficient if it sets forth the elements of the offense charged, puts the defendant on

fair notice of the charges against which he must defend, and enables the defendant

to assert a double jeopardy defense."  *United States v. Dashney*, 117 F.3d 1197,

1205 (10th Cir. 1997).  Claims that insufficient or illegally obtained evidence was

---

[14] Additionally, Springer's brief appears to advance one of the arguments for
which his counsel was recently "admonish[ed]" by this Court: that the IRS is
prohibited from operating outside of the District of Columbia (Br. 10).  *See United
States v. Springer et al*, 10-5037, order dated December 15, 2010 ("this court will
not tolerate such frivolous statements from a licensed attorney in the guise of
advocacy" and warning of the possibility of sanctions); *cf. Springer v. Comm'r*,
580 F.3d 1142, 1146 (10th Cir. 2009) (denying the government's motion for
sanctions against Springer and his counsel, Mr. Barringer); *United States v.
Patridge*, 507 F.3d 1092, 1095 (7th Cir. 2007) (sanctioning Mr. Barringer for,
among other things, "his inability to distinguish between plausible and
preposterous arguments" and "his disdain for the norms of legal practice").
Moreover, Springer fails to advance any discernable explanation regarding what
effect the IRS's purported geographical limitation would have on his prosecution,
since Springer was indicted by a grand jury and prosecuted by the United States
Attorney.  Nor does Springer explain the relevance of his related argument that
there was no proper criminal referral from the IRS—an argument which is belied
by the record in any event.  (*See* Part III below and Doc. 80-9.)

presented to the grand jury to support the indictment are not subject to review: "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974).

B.     *Discussion*

The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, provided for the reorganization of the IRS by subsequent administrative action.[15]  The IRS subsequently reorganized in 2000, altering its national structure "from a geographic structure to a structure based on nationwide jurisdiction of similar types of taxpayers," Notice of Proposed Rulemaking, 74 Fed. Reg. 39003, 39004 (Aug. 5, 2009) (providing background), and the Treasury Department later amended its tax-return filing regulations to reflect this change in structure.  *See* Treas. Dec. 9156, 69 Fed. Reg. 55743 (Sept. 16, 2004), *corrected by* 69 Fed. Reg. 60222 (Oct. 7, 2004) (amending 26 C.F.R. 1.6091-2).

---

[15]  Specifically, the Act directed the Commissioner of Internal Revenue to "develop and implement a plan to reorganize the Internal Revenue Service" that would "supersede any organization or reorganization of the Internal Revenue Service based on any statute or reorganization plan applicable on the effective date of this section." § 1001, 112 Stat. at 689.  The Act required the plan to "eliminate or substantially modify the existing organization of the Internal Revenue Service which is based on a national, regional, and district structure," though it also contained a "savings provision" stating that all IRS rules and regulations then in force "shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law by the President, the Secretary of the Treasury, the Commissioner of Internal Revenue, or other authorized official, a court of competent jurisdiction, or by operation of law." *Id.* at 689-90.

- 18 -

The gist of Springer's argument appears to be that the IRS's internal reorganization makes it impossible for anyone to be convicted of tax crimes. In short, he argues that, without internal revenue districts, there was no place where he was "required by law" to file his tax returns. (Br. 11.) This argument fails for several reasons.

First, its premise is wrong: there was a place where Springer was required to file his tax returns. Section 6091(b)(1)(B)(i) of Title 26 provides—as it provided in 2000—that the returns of "persons who have no legal residence or principal place of business in any internal revenue district . . . shall be made at such place as the Secretary may by regulations designate." 26 U.S.C. 6091(b)(1)(B). Since 2004, the Treasury Department's regulations have required individual taxpayers to file either at their local IRS office or at the IRS Service Center specified in the applicable tax return's instructions. *See* 26 C.F.R. 1.6091-2(a),(c),(d); 69 Fed. Reg. 55743 (Sept. 16, 2004) (amending 26 C.F.R. 1.6091-2). And the pre-2004 filing regulation, like the current one, required taxpayers to file their returns by mailing them to their particular Service Center. *See* 26 C.F.R. 1.6091-2(c) (2003). At all times relevant to this case, Springer's legal residence was in the county of Creek (*see* Springer May 4, 2010, Bail Mot. at 39 n.14) and the local IRS office serving his residence was in Tulsa (Doc. 71 at 5), both of which are in the Northern District of Oklahoma. *See* 28 U.S.C. 116(a). Thus Springer was required by law to file his tax returns, and he was resident in the Northern District of Oklahoma when he failed to do so.

- 19 -

Second, Springer's conclusions do not follow from his premise: even if there were no laws or regulations specifically requiring Springer to file his tax returns in the Northern District of Oklahoma, the indictment would still be sufficient and his (and Stilley's) convictions would still be valid. The obligation to file federal income tax returns and pay federal income taxes arises by statute, *see* 26 U.S.C. 1, 6012, as does the due date for those returns, *see* 26 U.S.C. 6072(a), and none of these provisions relies on the existence of (or even makes reference to) internal revenue districts or district directors. Springer's criminal failures to file were complete when he willfully failed to file his 2002 and 2004 tax returns "at the *time or times* required by law or regulations," 26 U.S.C. 7203 (emphasis added); *see also United States v. Sams*, 865 F.2d 713, 716 (6th Cir 1988) (§ 7203 violation complete once there is a duty to pay and willful nonpayment), without reference to any particular location requirement. And, as noted above, these crimes were committed while Springer lived in the Northern District of Oklahoma, making venue proper. *See United States v. Garman*, 748 F.2d 218, 220 (4th Cir. 1984) (in a failure-to-file case, "venue is proper in either the district of residence or the district where the service center is located"). The most that Springer can plausibly make of his internal-revenue-district argument is that he did not *willfully* fail to file his returns because he did not know where to file them—an argument the jury rejected when it convicted him on the willful-failure-to-file counts.[16]

---

[16] Additionally, even if the abolition of internal revenue districts in 2000 had some effect on the failure-to-file counts, it would have nothing whatever to do

- 20 -

II

THE PAPERWORK REDUCTION ACT OFFERS
NO DEFENSE TO CRIMINAL TAX CHARGES

The defendants' second argument (Br. 14-23), also meritless, is that the

"public protection provision" of the Paperwork Reduction Act (PRA), 44 U.S.C.

3512, prevented the district court from imposing any penalties based on their

counts of conviction.

A.  *Standard of Review*

Questions of law are reviewed de novo.  *Lewis v. Comm'r*, 523 F.3d 1272,

1274 (10th Cir. 2008).

B.  *Discussion*

The PRA requires an agency to receive approval from the Office of

Management and Budget to "conduct or sponsor the collection of information," 44

U.S.C. 3507(a), and § 3512(a) of the Act, entitled "Public protection," provides:

> Notwithstanding any other provision of law, no person shall be
> subject to any penalty for failing to comply with a collection of
> information that is subject to this subchapter if . . . (1) the collec-

---

with Springer's and Stilley's convictions for conspiring to defraud the United
States and attempting to evade Springer's income taxes.  Conspiracy to defraud the
United States requires an agreement between two or more people to impede the
government's lawful functions through means that are dishonest, *see
Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), and impossibility is
not a defense to conspiracy, *see United States v. Rosner*, 485 F.2d 1213, 1229 (2d
Cir. 1973).  Nor do internal revenue districts have anything to do with the tax-
evasion counts: "the elements of § 7201 are willfulness, the existence of a tax
deficiency, and an affirmative act constituting an evasion or attempted evasion of
the tax," *Boulware v. United States*, 552 U.S. 421, 424 n.2 (2008) (brackets and
ellipses omitted), and, as noted above, a person's liability for federal income taxes
does not depend on the existence of internal revenue districts, *see* 26 U.S.C. 1.

- 21 -

> tion of information does not display a valid control number
> assigned by the Director in accordance with this subchapter; or (2)
> the agency fails to inform the person who is to respond to the col-
> lection of information that such person is not required to respond
> to the collection of information unless it displays a valid control
> number.

Springer appears to argue that the Forms 1040 (Individual Income Tax Return) for

the relevant years fail to comply with these two requirements. This argument fails

for a number of reasons.

First, as this Court recently held in another of Springer's cases, the public-

protection provision does not prevent the government from imposing penalties that

"have an independent and separate statutory basis under the Internal Revenue

Code . . . not based on Mr. Springer's failure to file Form 1040s for the tax years

in question." *Springer v. Comm'r*, 580 F.3d at 1145 (holding that "failure-to-pay

penalties" were not covered by the public-protection provision); *see also United

States v. Chisum*, 502 F.3d 1237, 1244 (10th Cir. 2007). Despite Springer's claim

that each count of conviction is "inexorably linked" with a Form 1040, only the

two failure-to-file counts of conviction could potentially be affected by the PRA.

Second, Springer's argument is misplaced because even penalties for willful

failure to file under 26 U.S.C. 7203 are not subject to the public-protection

provision. A tax return is not "a collection of information that is subject to [the

PRA]," 44 U.S.C. 3512(a): the obligation to file tax returns comes not from any

agency rule or regulation but from statute, 26 U.S.C. 6012, and thus is neither

"conduct[ed] or sponsor[ed]" by an agency nor subject to OMB approval, 44

U.S.C. 3507. *See United States v. Gross*, 626 F.3d 289, 296 (6th Cir. 2010) ("a

defendant charged with either attempting to evade tax or failing to file a tax return

- 22 -

cannot rely on 44 U.S.C. 3512 as a defense"); *United States v. Patridge*, 507 F.3d
1092, 1094 (7th Cir. 2007) (explaining that "the obligation to file a tax return"
comes from statute, "not from any agency's demand," and is therefore not subject
to the PRA);[17] *cf. United States v. Dawes*, 951 F.2d 1189, 1192 (10th Cir. 1991)
("[w]e would be inclined to . . . hold that the operation of the PRA in these
circumstances did not repeal the criminal sanctions for failing to file an income tax
return because the obligation to file is a statutory one"); Rev. Rul. 2006-21, 2006-
15 I.R.B. (April 10, 2006) (citing cases).[18]

Finally, contrary to Springer's assertions (Br. 17-18), the Forms 1040 for
the years 2002 and 2004 do not violate the public-protection provision of the

---

[17] Springer's counsel, Mr. Barringer, was counsel of record in both *Gross*
and *Patridge*.

[18] In his brief, Springer tries to avoid this caselaw by maintaining that,
because the Form 1040 was the specific form he was required to file by regulation,
the PRA applies. (Br. 13.) But Springer is not being punished for failing to file a
particular, agency-specified form; he is being punished for willfully failing to
"make a return . . . at the time or times required by law or regulations." 26
U.S.C. 7203; *see also* 26 U.S.C. 6012, 6072 (establishing the income thresholds
and deadlines for filing a return); Doc. 2 (Indictment) ¶¶ 47, 49 (charging Springer
with willfully failing to "make and file an income tax return"); Tr. 2965
(instructing the jury that in order to convict Springer it had to find that he "was
required by law to file a tax return concerning his income" and that "he failed to
file such a return at the time required by law"). This Court has defined a "return"
as a document that "contains sufficient data from which the IRS can compute and
assess a tax liability." *United States v. Stillhammer*, 706 F.2d 1072, 1075 (10th
Cir. 1983). Thus, whatever argument Springer might have if he had filed a return
but was being penalized for failing to do so "according to the forms and regula-
tions prescribed by the Secretary" of the Treasury, 26 U.S.C. 6011, is irrelevant to
this case, because Springer failed to file any return at all. *See Patridge*, 507 F.3d
at 1095 (making the same point).

- 23 -

PRA.[19]  Both documents, in compliance with the public-protection provision, 44 U.S.C. 3512(a)(1)-(2), display a valid OMB control number, and each informs the recipient in its corresponding instructions that he or she is not required to respond without one.  (*See* Docs. 54-2, -4; Form 1040 Instructions (2002) at 76; Form 1040 Instructions (2004) at 75.)[20]

## III

## THE DISTRICT COURT PROPERLY DENIED SPRINGER'S AND STILLEY'S MOTIONS TO SUPPRESS EVIDENCE

Springer and Stilley next erroneously argue (Br. 23-34) that the IRS's civil and criminal investigations of them were undertaken in bad faith and in violation of the IRS's statutory authority, purportedly requiring reversal of the district court's judgments of conviction.[21]

---

[19] Springer's brief also invokes a provision of the Administrative Procedure Act, 5 U.S.C. 552, but fails to explain how or why it would prevent the imposition of criminal penalties in this case.  (Br. 18-19.)

[20] The Form 1040 instructions for 2002 and 2004 are available at http://www.irs.gov/pub/irs-prior/i1040--2002.pdf and http://www.irs.gov/pub/irs-prior/i1040--2004.pdf.  As this Court has held, the IRS satisfies its obligation "to inform the person responding to the request that he or she is not required to respond unless a valid control number is displayed . . . by making these disclosures in the instruction booklet associated with Form 1040." *Wheeler v. Comm'r*, 528 F.3d 773, 781 (10th Cir. 2008).

[21] The heading on page 29 of Springer's brief, which purports to begin a new argument, appears to be there erroneously—Springer's suppression argument continues in the text until page 34.

- 24 -

A. *Standard of Review*

In reviewing a district court's disposition of a motion to suppress, this Court reviews questions of law de novo but accepts the district court's "factual findings unless they are clearly erroneous," *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005), which occurs only when such findings are "simply not plausible or permissible in light of the entire record on appeal," *United States v. Zapata*, 546 F.3d 1179, 1192 (10th Cir. 2008). Also, even if this Court determines that the district court erroneously denied a motion to suppress evidence, it will not reverse the decision below unless an improper admission of evidence caused prejudice to the defendant's "substantial rights." Fed. R. Crim. P. 52(a); *see also United States v. Burgess*, 576 F.3d 1078, 1100 (10th Cir. 2009) ("An error affecting a substantial right of a party is an error which had a 'substantial influence' on the outcome [of the case] or which leaves one in 'grave doubt' as to whether it had such effect.").

B. *Discussion*

Section 7602 of Title 26 authorizes the IRS to issue civil summonses, but § 7602(d) provides that the IRS can no longer do so once it refers a person's case to the Department of Justice for criminal investigation. Springer argues that the district court should have "suppressed all evidence obtained in violation of 26 U.S.C.7602(d), as such was used to indict and try in bad faith." (Br. 23.) He also asserts that "[t]he Court was required to hold a hearing and quash all summons [sic] issued by" IRS civil investigators "and suppress all evidence obtained from their usage in bad faith." (Br. 26.) This argument fails for a number of reasons.

- 25 -

First, none of the evidence the IRS obtained from its civil summonses was introduced at trial. *See Burgess*, 576 F.3d at 1100 (an error is harmless when, "review[ing] the record as a whole . . . . the evidence [did not] ha[ve] a substantial influence on the jury's decision"). Nor could any evidence obtained from the civil summonses have affected the validity of the grand jury proceedings. *See United States v. Calandra*, 414 U.S. at 345. For this reason alone, Springer's argument fails.

Moreover, the district court's denial of Springer's suppression motion was correct because there was no evidence of a violation of § 7602(d) or bad-faith use of civil process. Section 7602 authorizes the IRS to issue administrative summonses related to both "the civil and the criminal aspects" of the tax laws. *United States v. LaSalle National Bank*, 437 U.S. 298, 308-09 (1978). "The IRS oversteps its bounds," however, if (1) "it uses the summons (for any purpose, civil or criminal) after referring the case to the Justice Department," or (2) "it uses the summons solely to gather evidence for a criminal prosecution before referring the case." *United States v. Becker*, 965 F.2d 383, 390 (7th Cir. 1992) (citing what is now 26 U.S.C. 7602(d)); *see also* § 7602(d)(2) (defining "referral"); *LaSalle*, 437 U.S. at 308 (holding that the IRS may not "issue a summons solely in aid of a criminal investigation").

The IRS issued civil summonses to Springer in 2004 as part of its civil investigation of whether Springer was promoting abusive tax shelters. (Br. 24, 32 (referring to summonses issued "between January 26, 2004 and December 2, 2004").) The next year, the IRS referred Springer to the Department of Justice,

- 26 -

requesting authorization to expand the existing Patterson grand jury investigation to include Springer's violations of the tax laws; the referral and request were made in a letter dated June 3, 2005 (Doc. 80-9), which was approved in a letter dated June 10, 2005.  (Doc. 80-1.)

Although Springer complains that evidence from the civil summonses was used in the grand jury's investigation of him, he does not go so far as to claim that the civil summonses were issued "solely in aid of a criminal investigation." *LaSalle*, 437 U.S. at 308.  Nor does Springer appear to claim that any IRS summonses were improperly issued after June 3, 2005.  Instead, his argument appears to be that the criminal referral occurred prior to the IRS issuance of summonses in 2004 because he was being investigated by the Patterson grand jury. But the activities of the Patterson grand jury are irrelevant: a "referral" under § 7602 occurs once the IRS "has recommended" that the Department of Justice undertake "a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws."  26 U.S.C. 7602(d)(2)(A)(i).

The district court found that the IRS recommended that the Department of Justice investigate Springer's tax crimes on June 3, 2005.  (7-2-2009 Tr. 84.)  In light of the referral letter from the IRS to the Department of Justice dated June 3, 2005 (Doc. 80-9), this finding was not clearly erroneous — and in fact was entirely correct.

- 27 -

IV

THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY

Next, the defendants incorrectly contend (Br. 35-37) that the district court committed reversible error in its instructions to the jury defining the terms "gift" and "income."

A.  *Standard of Review*

This Court "review[s] a district court's decision to give a particular jury instruction for an abuse of discretion and consider[s] the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law." *United States v. Gwathney*, 465 F.3d 1133, 1142 (10th Cir. 2006).  Even if this Court concludes that there was an instructional error, it will not reverse a defendant's conviction if the error was harmless beyond a reasonable doubt.  *See Neder v. United States*, 527 U.S. 1, 10-11 (1999).

B.  *Discussion*

Section 61 of the Internal Revenue Code, 26 U.S.C. 61, defines "gross income" to include, as an initial matter, "all income from whatever source derived"—in other words, everything within Congress's power to tax under the Sixteenth Amendment.  *See Comm'r v. Kowalski*, 434 U.S. 77, 82 (1977) ("The starting point in the determination of the scope of 'gross income' is the cardinal principle that Congress in creating the income tax intended to use the full measure of its taxing power" (internal quotation marks omitted).).

Section 102 then exempts from the definition of "gross income . . . property acquired by gift, bequest, devise, or inheritance."  26 U.S.C. 102.  The term "gift"

- 28 -

is not defined by statute, but has been interpreted by the Supreme Court to refer generally to payments that "proceed[] from a detached and disinterested generosity," and to exclude "payments in return for services rendered," even where "the donor derives no economic benefit from it." *Comm'r v. Duberstein*, 363 U.S. 278, 285 & n.7 (1960) (citing tips as the "classic examples" of voluntary yet non-gift payments). In undertaking this analysis, the controlling factor is the "intention with which payment, however voluntary, has been made . . . ." *Id.* at 286. But "the donor's characterization of his action is not determinative. . . . [T]here must be an objective inquiry as to whether what is called a gift amounts to it in reality." *Id.* Despite the government's urging in *Duberstein*, however, the Supreme Court expressly declined to establish any more precise definition, holding that the "nontechnical nature of the statutory standard" requires "determination of a case-by-case basis" and deference to "the conclusions of the trier of fact." *Id.* at 289-90.

Springer asserts that the district court's "definition of gift was legally wrong," although he does not explain why. (Br. 35.)[22] The district court's instruction, however, was entirely consistent with *Duberstein*, telling the jury that it "should consider the intent of the parties at the time the payment was made" and that "the question is whether in actuality the transfer is a bona fide gift or simply a

_____

[22] He also asserts that "the Trial Court's waiting to the trial's end to announce it's [sic] definition of 'Gift' violated Springer [sic] 5th Amendment Right to Due Process" (Br. 35), but offers no discernable argument as to why other than that he thinks it was legally incorrect. (*See* Br. 37 ("the Court's instruction was not the law and foreseen").)

- 29 -

method for paying compensation for services." (Tr. 2903-2904.) The district court went on to explain that the "practical test of whether income is a gift is whether it was received gratuitously and in exchange for nothing," so that "[w]here the person transferring the money did not act from any sense of generosity but rather to secure goods, services, or some other such benefit for himself or another, there is no gift." (Tr. 2904.) These instructions were consistent with both *Duberstein* and this Court's precedent. *See Dowell v. United States*, 553 F.2d 1233, 1238 (10th Cir. 1977) ("if a payment or transfer of other thing of value is made in anticipation of a benefit other than the personal satisfaction of having performed the act of generosity, the transaction is not a gift" (citing *Duberstein*)); *see also United States v. Terrell*, 754 F.2d 1139, 1149 n.3 (5th Cir. 1985).

Springer also asserts that the district court's use of the term "taxable income" rather than "gross income" in its instruction (Tr. 2903) was erroneous, although his reasoning is somewhat unclear. (Br. 36-37.) "Taxable income" is a subset of "gross income": under Section 63 of the Code, "taxable income" means "gross income minus" either "the deductions allowed by this chapter" or "the standard deduction[] and the deduction for personal exemptions." 26 U.S.C. 63(a)-(b) (formatting altered). Thus anything excluded from gross income is necessarily excluded from taxable income as well, meaning the district court was correct when it instructed the jury that "taxable income does not include money or property acquired by gift." (Tr. 2903.) This correct instruction also belies

- 30 -

Springer's unfounded assertion that the district court circularly defined "income" so that "all gifts are gross income because they're income." (Br. 36.)[23]

In sum, the district court's instruction was entirely correct.

V

THE DISTRICT COURT PROPERLY REFUSED
TO ALLOW THE DEFENDANTS TO SUBPOENA
GOVERNMENT WITNESSES IN VIOLATION
OF THE *TOUHY* REGULATIONS

The defendants' fifth argument (Br. 37-39) is that the district court's application of Treasury and Department of Justice regulations governing the issuance of subpoenas to federal employees violated defendants' Sixth Amendment rights and requires reversal of their convictions.

A.  *Standard of Review*

Questions of law are reviewed de novo.  *Lewis*, 523 F.3d at 1274.

---

[23] In making this claim about the district court's instructions, Springer cites four instances in which Brian Miller, an IRS fraud technical advisor (Tr. 1964) called as a witness for the government, used the term "income" as a shorthand for "gross income" (Tr. 1998, 2002, 2003, 2007), as well as one instance in which both Miller and counsel for the government did so (Tr. 2008).  The latter instances (Tr. 2007-2008), however, did not involve gifts but loans—which, rather than being statutory exclusions from the definition of "gross income," are not "income" at all, *see Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203, 207-08 (1990)—meaning these statements were entirely correct.  And Miller's earlier uses of "income" as shorthand for "gross income" did not occur in any context where they could be misleading.  (*See* Tr. 1998, 2002, 2003.)  Moreover, these statements by Miller were immediately followed by the district court's admonition to the jury "that the characterization of" the various "donations" to Springer "ultimately will be for you and you alone to determine" based on the court's "final instructions" (Tr. 2003-2004), which, as discussed, were entirely correct.  A jury, of course, "is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

B. *Discussion*

In *United States ex rel. Touhy v. Ragan*, the Supreme Court upheld the validity of a Department of Justice directive forbidding its employees from responding to subpoenas demanding production of "any official files, documents, records or information" without permission from the Attorney General. *See* 340 U.S. 462, 463 & n.1 (1951). The Court based its decision on the fact that the policy allowed Department employees to submit, if necessary, the requested papers to the district court for in camera review "for determination as to its materiality to the case." *Id.* at 468. Subsequently, this Court upheld a Department of Justice regulation requiring, as "a procedural predicate" to the process approved in *Touhy*, that a party attempting to subpoena a Department employee must "furnish" a "statement setting forth a summary of the testimony desired." *United States v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977) (quoting 28 C.F.R. 16.23(c)). Similar regulatory requirements apply to subpoenas directed towards IRS employees. *See, e.g.*, 26 C.F.R. 301.9000-4.

The individuals Springer asserts "would have testified" were all employees of the Department of Justice and IRS (Br. 37), yet the defendants made no attempt to comply with any of the applicable regulations. (7-2-2009 Tr. 4, 6, 73-74.) Nor do the defendants claim otherwise: instead, their argument is simply that "[t]he Court's harsh sanction under Toughy [sic] violates the Sixth Amendment Right" to call defense witnesses. (Br. 38.) But the district court imposed no "sanction" on them; it simply applied the regulations approved by the Supreme Court in *Touhy* and this Court in *Allen*.

- 32 -

VI

SPRINGER'S WAIVER OF HIS RIGHT TO COUNSEL
WAS VOLUNTARY, KNOWING, AND INTELLIGENT

Springer's final argument against the validity of his conviction (Br. 39-45)

is that he did not voluntarily, knowingly, and intelligently waive his right to

counsel.  Stilley expressly disclaims this argument, instead arguing that District

Judge Friot was improperly appointed to preside over his trial.  (Stilley Adoption

14.)[24]

A.  *Standard of Review*

This Court "review[s] the district court's factual findings for clear error" but

"review[s] the ultimate question of whether a constitutional violation occurred *de*

*novo*."  *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006).  A district

court must allow a defendant to represent himself if he properly invokes his right

to do so: deprivation of either the right to representation or self-representation

"requires automatic reversal because the impact of its denial is not amenable to

'harmless error' analysis."  *Id.*

---

[24] This improper-appointment argument was made by both defendants below
and in the defendants' bail motion to this Court, but it does not appear in
Springer's brief (although it did appear in Springer's original brief on appeal,
which was rejected by this Court, in a short section on page 66 entitled "Judge
Eagan and Judge Friot were prohibited from being Judge").  In any event, this
argument would fail because Judge Friot's appointment was authorized under 28
U.S.C. 292(b), which was held by the Supreme Court to be constitutional more
than a century ago.  *See McDowell v. United States*, 159 U.S. 596, 599-600
(1895); *cf. Nguyen v. United States*, 539 U.S. 69, 76 (2003) (explaining that § 292
allows only Article III judges to sit by designation).

- 33 -

B.    *Discussion*

The Supreme Court has held that the Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975).  This is because the Constitution does not allow the government "[t]o thrust counsel upon the accused, against his considered wish," *id.* at 820, in contravention of the "nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so . . . ." *Id.* at 817.

A criminal defendant does not forfeit this right merely because he is unskilled or would be a poor advocate on his own behalf.  The question is whether the defendant understood the right that he was waiving.  *See id.* at 835 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (internal quotation marks omitted)); *see also United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) ("A lawyer cannot be forced upon a defendant who wishes to waive his right to counsel even if self-representation would be detrimental.").  In other words, the waiver must be "knowing and intelligent," which in this context, as this Court has explained, "means only that he was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards."  *Id*. at 984; *see also United States v.*

- 34 -

*Smith*, 413 F.3d 1253, 1277 (10th Cir. 2005) ("The competence of a defendant's

waiver of the right to counsel depends only on his competence in waiving that

right . . . not on whether he is competent to represent himself at trial."), *abrogated*

*on other grounds by United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009).

And although a district court is not required to read any particular "formula or

script," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), this Court has held an invocation

of the right to self-representation valid where the defendant was "advised[] . . . of

the charges against him" and informed "that he had a right to competent counsel to

represent him" and "that he would be required to follow court rules without any

assistance." *Turner*, 287 F.3d at 984.

     Springer received these warnings—twice.  First, in his pretrial hearing

before Magistrate Judge Cleary (March 30, 2009 Tr. 3-8 and 11-16),[25] Springer

was advised of the charges against him (*id.* at 5-6, 12), informed that he had "a

constitutional right to representation [by] counsel in this matter," (*id.* at 4), and

told that, "if you represent yourself, you're on your own . . . . [t]he Court can't tell

you or advise you how to try the case . . . . [and] just because you go ahead and

represent yourself . . . the Court is not going to change the rules for you" (*id.* at 13-

14).  In his subsequent pretrial hearing before Judge Friot, Springer was again

---

[25] After the grand jury indicted Springer and Stilley on March 10, 2009,
Springer filed three motions before any determination had been made regarding
his *pro se* status.  (Docs. 5, 6, 7, 8.)  On the same date, the Honorable District
Judge James H. Payne, who was originally assigned, recused himself.  (Doc. 9.)
Springer was arraigned before Magistrate Judge Cleary on March 18, 2009, at
which time an attorney was appointed for his initial appearance and arraignment
only.  (Docs. 10, 11, 14, 15.)

- 35 -

given an extensive *Faretta* colloquy and questioned at length about his understanding of the advantages and disadvantages of invoking his right to self-representation (4-22-2009 Tr. 4-26).[26]  These colloquies not only "satisfied the constitutional minimum," *Tovar*, 541 U.S. at 92 (internal quotation marks omitted), they met this Court's best-practices standard.  *See United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991) ("Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se.").

Springer argues, however, that his invocation of his right to self-representation was not knowing and intelligent.  He asserts a variety of reasons, such as that the district court should have informed him that he would have to present his own testimony in narrative form and comply with the *Touhy* regulations (Br. 41) and that he could not fill out the affidavit required to obtained court-appointed counsel at taxpayer expense without incriminating himself (Br. 42).  None of these putative reasons has any merit: there is no authority for the proposition that a district court need identify, in advance, every possible procedural rule that the defendant must navigate at trial, and the self-incrimination argument is particularly puzzling, since in a tax case declaring indigence would tend to help a defendant.  *Compare United States v. Hardwell*, 80 F.3d 1471, 1484

---

[26]  Springer describes this colloquy, spanning 23 transcript pages, as a "short lecture about Appellant representing himself."  (Br. 39.)

(10th Cir. 1996) (holding that the government could not introduce a financial affidavit in a drug prosecution to establish that a defendant lacked legitimate sources of income).

Regardless, even if Judges Cleary and Friot had not engaged Springer in such thorough and comprehensive *Faretta* colloquies, the record leaves no doubt that Springer knew what he was doing and made his choice "with eyes open." *Faretta*, 422 U.S. at 835. This Court has previously described Springer's "long history of filing meritless federal actions and appeals pro se," *Springer*, 231 Fed. App'x at 802, and, as this Court has explained, a decision to represent oneself may even "be valid absent an inquiry by the court where the surrounding facts and circumstances, including the defendant's background and conduct, demonstrate that [he] actually understood his right to counsel and the difficulties of pro se representation and knowingly and intelligently waived his right." *United States v. Hughes*, 191 F.3d 1317, 1323-24 (10th Cir. 1999) (internal quotation marks omitted); *see also United States v. Gerritsen*, 571 F.3d 1001, 1013 (9th Cir. 2009) (holding that any deficiencies in the district court's warnings were cured by the defendant's "extensive prior experience representing himself in jury trials"). Springer—who, as described in the statement of facts above, has made a career of litigating against the government—cannot now escape the consequences of his ultimately unsuccessful decision to represent himself; "[t]here must be some limit to the defendant's ability to manipulate the judicial system." *Willie*, 941 F.2d at 1390.

- 37 -

VII

THE DISTRICT COURT CORRECTLY CALCULATED THE
DEFENDANTS' SENTENCING RANGES UNDER THE
GUIDELINES AND IMPOSED REASONABLE SENTENCES

Finally, Springer argues (Br. 45-53) that the district court erred when

computing his and Stilley's advisory ranges under the Sentencing Guidelines.

Specifically, he contends that the district court erred in its tax-loss calculation and

when it imposed the sentencing enhancements based on the defendants' (1)

criminal-source income (USSG §2T1.1(b)(1)) (Br. 50), (2) use of sophisticated

means in committing their crimes (USSG §2T1.1(b)(2)) (Br. 50-51), (3) conduct

intended to encourage others to violate the internal revenue laws (USSG

§2T1.9(b)(2)) (Br. 51-52), and (4) obstruction of justice (USSG §3C1.1) (Br. 52),

as well as (5) Springer's role as an organizer or leader of criminal activity (USSG

§3B1.1(a)) (Br. 52).

Stilley generally adopts Springer's arguments to the extent applicable to him

(Stilley Adoption 1), meaning Springer's tax-loss calculation argument and his

arguments regarding the enhancements for criminal-source income, sophisticated

means, encouraging others to violate the tax laws, and obstructing justice.

(Sentencing 412-420, 426.)  Stilley does not specifically challenge the sentencing

enhancement imposed by the district court under USSG §3B1.3 based on Stilley's

abusing his position as an attorney (*see* Sentencing 421-422), nor does he appear

to challenge the substantive reasonableness of his above-Guidelines sentence

based on the district court's application of the sentencing factors set forth in 18

U.S.C. 3553(a) (*see* Sentencing 449-450).

- 38 -

A.  *Standard of Review*

A court of appeals reviews "a criminal defendant's sentence for reasonableness, deferring to the district court under the familiar abuse-of-discretion standard of review." *United States v. Lewis*, 625 F.3d 1224, 1231 (10th Cir. 2010).  "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008) (*citing Gall*, 552 U.S. 38, 51 (2007)).  The Court first considers whether the district court committed any "significant procedural error," such as "improperly calculating" the Guidelines range, and then considers whether the sentence is substantively reasonable "given all the circumstances of the case in light of the factors set forth in" § 3553(a).  *Id.*  In the first step, when reviewing a district court's Guidelines calculation, this Court reviews the district "court's legal conclusions *de novo* and its factual findings for clear error."  *United States v. Alpaizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008) (internal quotation marks omitted).  In the second step, when reviewing the substantive reasonable of the ultimate sentenced imposed—whether it is within the advisory Guidelines range or not—this Court "consider[s] whether the length of the sentence is substantively reasonable utilizing the abuse-of-discretion standard."  *Id.* at 1216.

B.  *Discussion*

The district court determined that Springer's total offense level was 34 and that Stilley's was 32.  The district court sentenced each defendant to 15 years' imprisonment.  Springer's sentencing was within his Guidelines range; Stilley's sentence varied upwards by 3 years from the high end of his Guidelines range.

- 39 -

The district court imposed the upward variance on Stilley based upon the statutory sentencing factors, specifically § 3553(a)(6), "to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  (Sentencing 449-450.)

As detailed in the 469-page transcript of the 3-day sentencing hearing, the district court correctly determined the Guidelines range, treated the Guidelines as advisory, considered the § 3553(a) factors, and provided a detailed explanation of the sentence imposed upon each defendant.  *See Alpaizco-Valenzuela*, 546 F.3d at 1214-15.

### 1.    *The Tax Losses Were Correctly Calculated*

Based upon the evidence presented at trial, and during the sentencing hearing, the district court calculated that Springer and Stilley caused tax losses of $1,085,474 and $1,303,096, respectively.  (Sentencing 407-409.)

In reaching this conclusion, the district court first found the respective amounts of Springer's and Stilley's gross incomes for each of the tax years 1999-2008 and applied the default rule that tax loss is equal to 20% of an individual's gross income, *see* USSG §2T1.1(c)(2) (Note (A)).  (Sentencing 408-409.)  The district court then determined that each defendant's individual tax loss during the course of this conspiracy (from 1999-2008) was attributable to his co-defendant, because the conspiracy constituted "jointly undertaken criminal activity" under USSG §1B1.3(a)(1)(B).  (Sentencing 397, 408-411.)  The district court also included in Springer's tax loss the harm to the Treasury that Springer caused by himself, before he met Stilley, during the years 1990-1995 (Sentencing 397-398).

- 40 -

And the court further found that the $145,713 tax loss caused by Turner (who, among other things, gave Springer and Stilley $250,000 to hide from the IRS) was attributable to both Springer and Stilley, and that the tax losses caused by two of Stilley's clients were attributable to Stilley. (Sentencing 399-406, 408-409.) Finally, the district court included as tax loss the respective amounts of Springer's and Stilley's state tax obligations (Sentencing 407-408).

Springer appears to object to the inclusion of his tax loss for 1990-1995 on the ground that "[a]ll evidence showed all possible claims by the Secretary of the Treasury for 'tax loss' for 1990 through 1995 extinguished as of August 23, 2008." (Br. 46.) The reference to August 23, 2008, appears to be an undeveloped argument that the release of an IRS lien extinguishes the underlying tax obligation (Sentencing 194, 197), which in any event is meritless. Springer's tax deficiencies for those years were never extinguished, and the United States recently obtained a civil judgment against Springer "in the total amount of $381,702.39, plus interest and all other statutory additions provided by law" for those years. *See* Doc. 180 (Judgment), *United States v. Springer et al.*, 08-cv-278-TCL-PJC (N.D. Okla.) (on appeal before this Court in case number 11-5018). Relatedly, Springer cites *United States v. Meek*, 998 F.2d 776 (10th Cir. 1993), for the proposition that relevant conduct under the sentencing Guidelines must be "criminal not civil" (Br. 46), but *Meek* also held that a district court may consider criminal "non-charged conduct," *id.* at 783, which renders Springer's reliance on *Meek* for the proposition that some of his relevant conduct was "outside the years in the indictment" nonsensical. (Br. 47.) All the district court was required to do was

- 41 -

find, as it did, that Springer's tax deficiency for 1990-1995 was more likely than

not due to criminal willfulness rather than mistake or inadvertence, *see Cheek v.*

*United States*, 498 U.S. 192, 200 (1991), which was amply supported by the

record (*see, e.g.*, Tr. 941, 946-947, 2772).

       Springer also objects to the district court's application of the Guideline's

direction that, "[i]f the offense involved the failure to file a tax return, the tax loss

shall be treated as equal to 20% of gross income . . . less any tax withheld or

otherwise paid, unless a more accurate determination of the tax loss can be made."

USSG §2T1.1(c)(2) (Note (A)).  (Br. 48.)  However, other than seeking to have the

tax loss limited to the evidence presented at trial (Br. 47-48), *contra Meek*, 998

F.2d at 783, Springer articulates no legal impediment to the district court's

application of the Sentencing Guideline's estimate of tax loss.  *See United States*

*v. Spencer*, 178 F.3d 1365, 1367-68 (10th Cir. 1999) ("We note preliminarily that

Spencer has identified no specific records from which a more accurate tax loss

determination could have been made.  His speculation and conclusory allegations

will not suffice.")  And, for the reasons discussed in Argument IV above, Springer

is simply wrong when he claims that whether money is taxable income or a non-

taxable gift turns on whether "the payments were mandatory."  (Br. 45.)

       Finally, the defendants object to the district court's refusal to consider

evidence that Springer's tax loss should have been reduced with respect to the

"millions of dollars" that "Springer helped collect" as a result of his telling people

they should file federal income tax returns and pay taxes.  (Br. 49-50; Stilley

Adoption 16.)  In declining to reduce Springer's tax loss for the instances in which

- 42 -

he did not cause others to violate the law, the district court correctly explained that the "determination of the tax loss, for guidelines purposes, resulting from Mr. Springer's failure to comply with his personal obligations under federal tax law will not be affected by any considerations relating to any taxes purportedly paid by other individuals at Mr. Springer's instance." (Doc. 324 at 2-3.) This is because a defendant's "tax loss" under the Guidelines is defined as "conduct violating the tax laws," §2T1.1 (comment. (n.2)); conduct *not* violating the tax laws is therefore irrelevant to the tax-loss calculation. If Springer's argument were accepted, it would lead to the absurd result that dishonest tax-return preparers would be able to insulate themselves from their own criminal conduct by ensuring that they prepared more accurate tax returns than fraudulent ones.

      2.    *The Sentencing Enhancements Were Appropriate*

      a. The district court correctly concluded that the two-level enhancement under USSG §2T1.1(b)(1) for criminal-source income exceeding $10,000 in any year applied to both defendants, finding that their defrauding Patrick Turner of $250,000 "certainly was wire fraud under 18 U.S.C. 1343" and that the transactions with Mr. and Mrs. Hawkins "also generated criminal source income," because Springer and Stilley's "joint representation of Arthur Hawkins was, from its inception, an exercise in fraud and obtaining money under false pretenses." (Sentencing 412-413.) The defendants' continued factual contentions (Br. 50; Stilley Adoption 16) that the $250,000 received from Turner and routed through Stilley's IOLTA was somehow legitimately being held in trust to protect it from the IRS is not only belied by the record—as noted above, Springer promptly used

- 43 -

the funds to buy himself a Lexus, a trailer, and a $166,000 motor home (Tr. 1457-

1476, 1992-1993, 2063-2065)—but were also rejected by the jury when it

convicted Springer of tax evasion for 2005. (*See* Tr. 2107 (Brian Miller, an IRS

technical advisor, noted that without the money taken from Turner there would not

"have been any tax liability" for 2005).) The district court's finding that Springer

and Stilley attempted to "legitimize an intrinsically fraudulent transaction" by

creating fake documentation and a fictional security interest (Sentencing 404-405)

was therefore entirely correct, and it certainly did not constitute clear error.

      b. The district court also correctly imposed two-level sentencing

enhancements on both defendants under §2T1.1(b)(2) for their use of

"sophisticated means" in carrying out their crimes. As the Seventh Circuit has

explained, "'sophistication' must refer not to the elegance, the 'class,' the 'style'

of the defrauder—the degree to which he approximates Cary Grant—but to the

presence of efforts at concealment that go beyond (not necessarily far beyond . . .)

the concealment inherent in tax fraud." *United States v. Kontny*, 238 F.3d 815,

821 (7th Cir. 2001). Thus "the essence of the "sophisticated means" is merely

'deliberate steps taken to make the offense difficult to detect.'" *Id.* (ellipses

omitted) (quoting the Guidelines commentary for the former, narrower standard of

"sophisticated concealment"[27]). The district court in this case found that Springer

---

    [27] *See* Amendments to the Sentencing Guidelines, Policy Statements, and
Official Commentary 40-42, 69 (2001), *available at*
http://www.ussc.gov/2001guid/congress2001.pdf (explaining that the substitution
of the present "sophisticated means" standard was intended to "allow the enhance-
ment to apply to a somewhat greater range of tax offenses than the previously
existing sophisticated concealment enhancement").

- 44 -

and Stilley took such steps:  "The sophisticated means adjustment fits the facts of

this case as to both defendants quite well.  The most obvious example of that, but

certainly not the only example of that, is the using of Mr. Stilley's IOLTA

account. . . . In this case, though, Mr. Stilley's IOLTA account was an instrument

of fraud pure and simple . . . for the use and benefit both of Mr. Stilley and Mr.

Springer."  (Sentencing 414-415.)  Contrary to Springer's assertion that "every

transaction involving Springer was in Springer's name or BBM [Bondage

Breakers]" (Br. 50), hundreds of thousands of dollars were sent to Springer

through Stilley's IOLTA.  And, as the district court found, "Bondage Breakers

Ministry" was simply a nominee account that Springer employed in order to evade

his taxes (Sentencing 415).  The district court therefore did not abuse its discretion

in finding that Springer and Stilley undertook sophisticated means to make their

crimes more difficult to detect.  *See United States v. Jones*, 530 F.3d 1292, 1305

(10th Cir. 2008) (reviewing the imposition of a sophisticated-means enhancement

"deferentially rather than de novo" and noting that "conduct such as hiding assets

or transactions, or both, through the use of fictitious entities . . . ordinarily

indicates sophisticated means" (quoting Guidelines commentary note 8(B)).

  c.  In applying the two-level sentencing enhancement to both defendants

under §2T1.9(b)(2), the district court correctly found that "defendants have

engaged in conduct during the course of their jointly-conducted criminal activity

that was intended to encourage persons other than or in addition to co-conspirators

to violate the Internal Revenue laws or impede, impair, obstruct, or defeat the

ascertainment, computation, assessment, or collection of revenue."

- 45 -

(Sentencing 419-420.)  In making this finding, the district court credited the

testimony of several witnesses—including Roberts, Lake, the Pattersons,

Dingman, and Special Agent Shern (Sentencing 21, 419-420; Tr. 317, 395, 708,

842, 395)—as it was entitled to do as the finder of fact, *see United States v.*

*Gilgert*, 314 F.3d 506, 515-16 (10th Cir. 2002) ("On clear error review, our role is

not to re-weigh the evidence.").

      d.  The district court also correctly determined that the two-level

enhancement for obstruction of justice under §3C1.1 applied with respect to each

defendant, finding that both defendants made false statements under oath for the

purpose of deceiving the jury.  (Sentencing 425-427.)  Springer's argument to the

contrary (Br. 52) amounts to no more than an attempt to re-litigate the central issue

at trial: whether he (and by extension Stilley) actually believed, in good faith, the

various theories they espoused on the stand justifying their failure to pay taxes.

Not only are these theories legally meritless for the reasons described in this brief,

but the jury, in convicting the defendants of tax evasion, necessarily found that the

defendants did not actually believe these theories in good faith.  *See Cheek*, 498

U.S. at 200 ("willful[ness]" under 26 U.S.C. § 7201 requires a "voluntary,

intentional violation of a known legal duty"); *United States v. Hien Van Tieu*, 279

F.3d 917, 921 (10th Cir. 2002) (explaining that it is the jury's prerogative to

"weigh conflicting evidence [and] consider witness credibility").  All the district

court was required to do to impose an enhancement under §3C1.1 was to make an

independent finding, based on this evidence, that Springer and Stilley lied in their

testimony.  *See United States v. Mounkes*, 204 F.3d 1024, 1029 (10th Cir. 2000).

- 46 -

This is exactly what the court did, finding that "[t]he defendants' testimony was . . . unequivocal, it was false, it related to material matters that were in issue in the trial of this case or before the grand jury[,] and the false testimony was willfully and intentionally given as false testimony rather than as a result of confusion, mistake, or faulty memory."  (Sentencing 427.)

e.  Finally, the district court correctly applied a four-level enhancement under §3B1.1(a), based on its finding that "Springer was the organizer or leader of a criminal activity [and] that it was otherwise extensive within the meaning of Guideline 3B1.1(a)."  (Sentencing 421.)  As the district court found, Springer's criminal enterprise caused over one million dollars' worth of harm (Sentencing 408), involved numerous individuals around the country, and lasted for years (Springer 421-422), thus easily exceeding the scope, duration, and magnitude of harm necessary to support an extensiveness finding under this Court's precedent. *See United States v. Yarnell*, 129 F.3d 1127, 1139 (10th Cir. 1997) (upholding a district court's finding that a criminal enterprise was extensive where it "lasted four months, created at least 40 victims, and generated losses in excess of $140,000").

VIII

THIS COURT SHOULD DECLINE TO ADDRESS ISSUES
RAISED IN A PERFUNCTORY MANNER UNACCOMPANIED
BY SOME EFFORT AT DEVELOPED ARGUMENTATION

A.  *Standard of Review*

"The court will not consider such 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.'"  *United*

- 47 -

*States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (citations omitted); *see also* Fed. R. App. P. 28(a)(9)(A); *United States v. Callwood*, 66 F.3d 1110, 1115 (10th Cir. 1995) ("A litigant who mentions a point in passing but fails to press it by supporting it with pertinent authority . . . forfeits the point." (internal quotation marks omitted)); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.").

B. *Discussion*

Springer's brief raises numerous additional claims in a perfunctory and undeveloped fashion. The following perfunctory assertions, made without citation to authority or the record, should be disregarded to the extent they are not included in arguments already addressed:

- "Count Two violated statute of limitations." (Br. 53.)

- "Count Four failed to allege and prove the tax deficiency element." (Br. 53.)

- "Springer claims the prosecution was unlawful without a U.S. Attorney to exercise the referral." (Br. 53.)

- "Springer also claims District Judges Eagan and Friot were prevented from participating due to Judge Eagan's involvement in 03-cr-055." (Br. 53-54.)

- "Springer claims the evidence was insufficient to establish beyond reasonable doubt each element of each offense alleged in Counts One through Six. The 'required by law' duty was not shown. The Trial Court should have granted Judgment of Acquittal at any of the three times

- 48 -

Springer requested it. . . . this Court should reverse dismiss [sic] each count as the evidence was insufficient."  (Br. 54.)

Even if this Court were to consider these assertions, however, they are all meritless.

Contrary to Springer's first assertion, the indictment alleged, and the government proved, affirmative acts of evasion that occurred within the statute of limitations period (*i.e.*, on or after March 10, 2003).  For example, the indictment accused Springer of "making false statements to agents and employees of the Internal Revenue Service."  (Doc. 2 at 8.)  An IRS special agent testified that Springer, in an interview on in a September 16, 2005, falsely stated he had no income and "never provided any services for people in exchange for payment." (Tr. 1815.)

Also, Count Four of the indictment did allege a "tax deficiency element," charging that "upon [Springer's] taxable income there was a substantial income tax due and owing."  (Doc. 2 at 11.)  And, following its instructions, the jury found beyond a reasonable doubt that Springer, in 2005, "received taxable income and upon that taxable income there was a substantial income tax due and owing." (Tr. 2914.)

With respect to Springer's assertions that the U.S. Attorney did not have authority to prosecute him and that the district judges "were prevented from participating," the district court previously considered and correctly rejected each of these meritless contentions.  (Docs. 293 at 8-13 and 312 at 3-5.)

- 49 -

As to sufficiency, the evidence presented to the jury in this case was amply sufficient to allow a "rational trier of fact" to "find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In addition to the evidence against them presented in the government's case-in-chief, Springer's and Stilley's own testimony provided the jury a basis to disbelieve them and find that they acted with the necessary intent to violate the law and defraud the United States. *See Hien Van Tieu*, 279 F.3d at 921 (explaining that it is the jury's prerogative to "consider witness credibility"); *see also United States v. Martinez*, 979 F.2d 1424, 1430 (10th Cir. 1992) ("the jury is entitled to disbelieve the defendant").

Finally, Stilley argues (Stilley Adoption 13-14, 17) that the government may never charge a felony conspiracy to defraud under 18 U.S.C. 371 "with respect to a tax offense," because that would create a common-law crime, allowing (as he puts it) the IRS to "terrorize the citizenry by bringing cases only where they have politically reliable persons such as Judge Friot, ready and willing to imprison citizens based on a corruption of the law from a foreign circuit." (Stilley Adoption 13-14.) Relatedly, Stilley argues that, if a conspiracy to defraud cannot be a felony, he cannot be imprisoned for more than 30 days on the conspiracy-to-defraud count because "defraud[ing]" is only a misdemeanor at common law. (*Id.* 16-17.) These arguments are absurd. A violation of the defraud clause, which under the terms of the statute carries a sentence of up to 5 years' imprisonment, *see* 18 U.S.C. 371, is a distinct offense from a conspiracy to commit any particular federal crime. *See Dennis v. United States*, 384 U.S. 855, 863-64 (1966). The jury

- 50 -

was correctly instructed that a conspiracy to defraud requires an agreement to
impede one of the government's lawful "functions by deceit, craft, or trickery or at
least by means that are dishonest" (Tr. 2907) (quoting *Hammerschmidt*, 265 U.S.
at 188), and on that basis it convicted Stilley.

- 51 -

## CONCLUSION

For the reasons stated above, the judgments and sentences imposed by the district court should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the United States state that, in their view, oral argument is unnecessary, because the relevant facts and law are fully discussed in the government's brief and because the majority of Springer and Stilley's arguments are frivolous. Moreover, contrary to Springer's assertion (Br. -a-), there is no disagreement among the circuits regarding the effect of either the IRS Restructuring and Reform Act of 1998 or the Paperwork Reduction Act on the obligation to file tax returns and pay taxes.

Respectfully submitted,

FRANK P. CIHLAR          (202) 514-5396
  *Chief, Criminal Appeals &*
  *Tax Enforcement Policy Section*
  *Tax Division*

 s/ Charles A. O'Reilly
GREGORY VICTOR DAVIS   (202) 514-5396
CHARLES A. O'REILLY    (202) 514-5396
ALEXANDER P. ROBBINS   (202) 514-5396
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
THOMAS SCOTT WOODWARD
 *United States Attorney*

DATED:      MARCH 2011

- 52 -

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,654 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a 14-point, proportionally spaced typeface (Times New Roman) using WordPerfect X3.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


　　　　　　　　　　　　　　　 s/ Charles A. O'Reilly
　　　　　　　　　　　　　　CHARLES A. O'REILLY
　　　　　　　　　　　　　　*Attorney for the United States*

DATED:    March 21, 2011

- 53 -

CERTIFICATE REQUIRED BY GENERAL ORDER OF MARCH 18, 2009

As required by Part V(B) of the General Order, I hereby certify that (1) the required privacy redactions have been made, (2) the 7 hard copies of the brief being sent to the Court are exact copies of the ECF submission, and (3) this ECF submission was scanned for viruses using Trend Micro OfficeScan version 8.0 (updated daily), and, according to the program, is free of viruses.

    s/ Charles A. O'Reilly
CHARLES A. O'REILLY
*Attorney for the United States*

DATED:     March 21, 2011

- 54 -

CERTIFICATE OF SERVICE

As provided under Fed. R. App. P. 25(c) and Local Rule 25.4, on this date

I served a copy of this brief on the other parties to this appeal both by using this

Court's electronic transmission equipment, and by mailing a paper copy to Jerold

W. Barringer, counsel for Appellant Lindsey Kent Springer, and to pro se

Defendant Stilley, at the following addresses:

> Jerold W. Barringer, Esq.
> P.O. Box 213
> 20 West Front
> Nokomis, Illinois 62075
>
> Oscar Stilley #10579-062
> FCI Forrest City Low
> Federal Correctional Institution
> P O Box 9000
> Forrest City, Arkansas 72336

 s/ Charles A. O'Reilly      
CHARLES A. O'REILLY
*Attorney for the United States*

DATED:    March 21, 2011